**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE
CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING
EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Levond Tayano Keitt, Appellant.

Appellate Case No. 2020-000130

———————

Appeal From Fairfield County
Thomas A. Russo, Circuit Court Judge

———————

Unpublished Opinion No. 2022-UP-121
Submitted March 2, 2022 – Filed March 23, 2022

———————

**AFFIRMED**

———————

Appellate Defender Victor R Seeger, of Columbia, for
Appellant.

Attorney General Alan McCrory Wilson and Senior
Assistant Deputy Attorney General William M. Blitch,
Jr., both of Columbia, and Solicitor Randy E. Newman,
Jr., of Lancaster, all for Respondent.

———————

**PER CURIAM:** Levond Tayano Keitt appeals his conviction of assault and battery
in the first degree. On appeal, Keitt argues the trial court erred in denying his motion
to suppress evidence of his movements obtained from a warrantless search of the

global positioning system (GPS) data recorded by an ankle monitor Orangeburg County installed as a condition of his bond on an unrelated charge. Keitt claims he had a reasonable expectation of privacy in this GPS data because he only consented to allow Orangeburg County to monitor him by GPS for the limited purpose of enforcing his bond conditions. We find any error in admitting the GPS data harmless, and thus, we affirm.

## I.    FACTS

In the early morning hours of March 17, 2018, Keitt picked up Chattiqua Richardson (Victim), an acquaintance he had met a few times before, from a bar called Faces in Fairfield County. Victim admitted she got into Keitt's car willingly. She also willingly performed oral sex on Keitt but stated she did not intend to have any other kind of sex with him as she was menstruating. Victim testified Keitt drove into the woods, stopped the car, and got out of the car. Victim stated when she also got out of the car, Keitt attacked her, hit her over the head with a log, and raped her. Victim stated after the attack, she got back in the car with Keitt, and when she later got out of the car, she left her purse and cell phone, and Keitt tried to run her over. She ran through some woods to I-77. A good samaritan picked Victim up from the side of the road and took her to her sister's house. Victim went to the hospital, where she was treated for injuries to her head–specifically, a scalp laceration that required seven staples and a swollen left eye; a possible cervical spine/neck injury; and bruising on her arms, legs, and buttocks. Additionally, a Sexual Assault Nurse Examiner (SANE nurse) collected swabs and other items for a rape kit.

Investigator Bill Dove interviewed Victim at the hospital. Victim told Dove her attacker was a man she knew as "Von" and gave Dove Von's phone number. Dove used the phone number and located Keitt's Facebook profile. When Dove showed Victim Keitt's Facebook picture, she identified him as Von, the person who attacked her. Victim also identified the general location of the attack as Mount Hope Road, a secondary road near I-77.

Dove met with Keitt, showed him Victim's photograph, and told him Victim had accused him of sexually assaulting her. Keitt claimed he did not know Victim and asked when the alleged sexual assault occurred. When Dove told Keitt March 17, 2018, Keitt stated, "[i]t couldn't have been me, I was in Savannah," telling Investigator Dove he could check Keitt's GPS ankle monitor. Dove contacted Keitt's bond servicer and received a report detailing Keitt's location the day of the alleged assault. The report showed Keitt was near Faces in the early morning hours of March 17, and around the time of the alleged assault, Keitt was driving on I-77 and later

stopped on Mount Hope Road.  Dove obtained a warrant for Keitt's arrest.  In December 2018, a Fairfield County grand jury indicted Keitt for criminal sexual conduct (CSC) in the first degree and assault and battery in the first degree.

Prior to his trial in January 2020, Keitt moved to suppress the GPS tracking report pursuant to the Fourth Amendment and § 17-30-140 of the South Carolina Code (2014)[1] because (1) the police obtained the GPS report without a warrant for a purpose other than monitoring and (2) Keitt did not give up his privacy rights to his GPS data except as related to his bond on his unrelated charge and the police had not complied with § 17-30-140.  The trial court admitted the report, ruling Keitt did not have a reasonable expectation of privacy in the GPS data because it was a condition of his bond in the unrelated case.  During the trial, Victim testified Keitt was her attacker.  A South Carolina Law Enforcement Division DNA analyst testified the oral swab of Victim's mouth taken by the SANE nurse at the hospital the day of the alleged assault indicated the presence of semen, and she explained, "[t]he DNA profile [from the oral swab] is approximately 1.8 octillion times more likely if [Victim] and Levond Keitt contributed to the mixture."  The jury found Keitt guilty of assault and battery in the first degree but acquitted him of the CSC charge.  The trial court sentenced him to ten years' imprisonment.  This appeal followed.

## II.    ADMISSION OF THE GPS REPORT

Keitt argues the trial court erred and violated his Fourth Amendment rights when it admitted his GPS evidence.  We need not reach this issue because even if the admission of Keitt's GPS evidence was error, any error was harmless.[2]  *See State v. Brooks*, 428 S.C. 618, 627, 837 S.E.2d 236, 241 (Ct. App. 2019) ("Most trial errors, even those [that] violate a defendant's constitutional rights, are subject to harmless-error analysis." (alteration in original) (quoting *State v. Rivera*, 402 S.C. 225, 246, 741 S.E.2d 694, 705 (2013))).

The GPS evidence did support Keitt's claim that he was in Savannah on March 17, but it placed him there the evening after the early morning attack on Victim.  The GPS evidence discounted both Keitt's alibi defense that he was in Savannah at the

---

[1] Section 17-30-140 provides what the State must include in an application to a court for "an order authorizing or approving the installation and use of a mobile tracking device."  We express no opinion on the applicability of this statute to the GPS issue.
[2] We express no opinion as to the merits of Keitt's Fourth Amendment claim or the applicability of any other constitutional or statutory provision to GPS evidence collected by a monitor installed as a condition of bond or pretrial release.

time of the assault and his statement that he did not know Victim. However, the DNA evidence was so powerfully incriminating that it effectively undercut Keitt's alibi defense on its own. Moreover, the State presented evidence that Victim initially identified her attacker as "Von"; after Victim provided Dove "Von's" phone number, Dove searched Facebook using the phone number and found Keitt's Facebook page; and Victim identified Keitt as "Von" after viewing Keitt's Facebook picture. Based on this properly admitted and competent evidence, we find there is overwhelming evidence of Keitt's guilt. *See State v. Collins*, 409 S.C. 524, 538, 763 S.E.2d 22, 29–30 (2014) (providing "error 'is harmless where a defendant's guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached'" (quoting *State v. Bryant*, 369 S.C. 511, 518, 633 S.E.2d 152, 156 (2006))); *State v. Heath*, 433 S.C. 506, 860 S.E.2d 673, 679 (Ct. App. 2021) (providing in a CSC with a minor case, any error in admitting the victim's statements that defendant performed oral sex on her was harmless where there was overwhelming physical evidence of the defendant's guilt, including saliva matching the defendant's DNA found in the victim's underwear); *see also Collins*, 409 S.C. at 537, 763 S.E.2d at 29 ("The harmless error rule generally provides that an error is harmless beyond a reasonable doubt if it did not contribute to the verdict obtained."); *id.* ("To say that an error did not 'contribute' to the ensuing verdict is not, of course, to say that the jury was totally unaware of that feature of the trial . . . ." (quoting *Arnold v. State*, 309 S.C. 157, 166, 420 S.E.2d 834, 838 (1992))); *id.* at 537–38, 763 S.E.2d at 29 ("Rather, '[t]o say that an error did not contribute to the verdict is . . . to find that error unimportant *in relation to everything else the jury considered on the issue in question,* as revealed in the record.'" (alteration in original) (quoting *Arnold*, 309 S.C. at 166, 420 S.E.2d at 839)). As Keitt's counsel pointed out at trial, there were problems with the Victim's credibility and the State's physical evidence related to the CSC charge (of which Keitt was acquitted), but we can say, beyond a reasonable doubt, that the GPS data did not contribute to the assault and battery verdict. Accordingly, we affirm.

**AFFIRMED.**[3]

**KONDUROS, HILL, and HEWITT, JJ., concur.**

---

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.